NEW YORK LIFE INSURANCE COMPANY *vs.* FRANK H. HARDISON.

MUTUAL BENEFIT LIFE INSURANCE COMPANY *vs.* SAME.

Suffolk.   March 18, 19, 1908. — May 23, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, & LORING, JJ.

*Insurance,* Life, Endowment, Statutory requirements as to substance and form of policy. *Insurance Commissioner. Statute. Constitutional Law. Practice, Civil, Amicus curiae.*

A policy of life or endowment insurance, which provides for a grace of one month for the payment of every premium after the first, does not satisfy the requirement of St. 1907, c. 576, § 75, cl. 1, that a grace of thirty days shall be provided.

A provision in a policy that "This policy constitutes the entire contract between the parties, and is free of conditions as to residence, occupation, habits of life, and manner, time or place of death," is not a compliance with St. 1907, c. 576, § 75, cl. 3, requiring policies of life or endowment insurance to contain a provision "that the policy and the application therefor shall constitute the entire contract between the parties and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties and that no such statement shall be used in defense to a claim under the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued."

No departure from the exact requirements of St. 1907, c. 576, § 75, cl. 3, relating to the effect of statements in an application for life insurance, should be permitted in any policy unless it is too plain for doubt that the substitution is in every way as advantageous and as desirable to the insured as the prescribed provision.

A provision in a policy of life or endowment insurance that it "shall be incon-

testable, except for non-payment of premiums, from its date " is not a compli-
ance with the requirement of St. 1907, c. 576, § 75, cl. 2, that every such policy
shall contain "a provision that the policy shall be incontestable after two years
from its date . . . except for non-payment of premiums and for engaging in
military or naval service in time of war without the consent in writing of an ex-
ecutive officer of the company," and also is not in accordance with public policy.

A policy of life insurance provided that, within one month from default in premium
payments, the insured might surrender the policy for its cash surrender value
(which was an amount computed according to certain tables, "less any in-
debtedness to the company herein ") or surrender the policy for a "non-partici-
pating paid-up policy," or that, if he did not surrender the policy, the insurance
would be automatically extended for a period equivalent to the extended insur-
ance which the then cash surrender value of the policy would purchase. Its
reinstatement clause provided that, in case of default in premium payments, the
arrears might be paid in one month, or, if the insured within the month so re-
quested, the arrears would be charged as an indebtedness against the policy,
bearing interest, provided the entire indebtedness then outstanding would be
within the cash surrender value, "or this policy may be reinstated at any time
after the said month, upon evidence of insurability satisfactory to the company
and payment of all arrears with interest thereon, provided, in any case, the
policy has not been surrendered to the company." *Held,* that, although the
provision as to reinstatement did not follow the exact language of St. 1907,
c. 576, § 75, cl. 10, with regard to reinstatement requirements, and did not re-
quire before reinstatement the payment of "any other indebtedness " besides
arrears of premiums, it nevertheless, in connection with the other provisions of
the policy, secured to the insured all that was secured by the statute, and was
not objectionable.

The provision of St. 1907, c. 576, § 75, cl. 8, requiring in policies of life or endow-
ment insurance a table "showing in figures the loan values, if any," is satisfied
if the policy contains, after a statement under a heading in large type, "Loans,"
a statement that "At any time while this policy is in force, the company will
loan up to the limit secured by the cash surrender value," followed in a succeed-
ing paragraph by a table headed "Cash Surrender Value," stating such values
for each year of the policy.

While it is a general rule that, in the consideration of a suit based upon a statute,
this court will not consider the constitutionality of the statute upon an objection
made by persons whose rights are not affected by it, and usually the parties to the
suit are the only ones who are permitted to raise such a question, nevertheless,
in a case where both the justification of the acts of the defendant and the power
of the court to give the relief sought by the plaintiff depend entirely upon the
validity of the statute, so that both of the parties to the suit are precluded from
raising the question of the constitutionality of the statute, and the attention of
the court is brought to that question by persons who are interested in the effect
to be given to the statute although not interested in the precise case before the
court, it is the duty of this court to consider whether it has jurisdiction before it
takes affirmative action.

St. 1907, c. 576, § 75, which provides that no policy of life or endowment insurance
shall be issued or delivered in this Commonwealth until a copy of its form has
been filed at least thirty days with the insurance commissioner, or if the commis-
sioner notifies the insurance company in writing within such thirty days that
in his opinion the form submitted does not comply with the requirements, speci-
fying his reasons; and that the action of the commissioner shall be subject to

review by "the Supreme Court of the Commonwealth"; and which prescribes certain substantive provisions that must be in all such policies, is a constitutional enactment regulating the business of insurance, being within both the police power of the Legislature and within its power as the creator of domestic and the controller of domestic and of foreign corporations doing business within the Commonwealth; nor does it improperly delegate power to the commissioner, since it merely appoints him as an administrative officer to pass upon whether the forms of policies submitted conform to the legislative requirements, his decisions being subject to review in original proceedings which the companies may bring before a court of law properly designated for the purpose.

Two PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk December 26, 1907, under St. 1907, c. 576, § 75, seeking a review of the action of the insurance commissioner in refusing to approve forms of policies for life insurance which the petitioners had filed with him.

The first petition was reserved by *Morton,* J., upon the petition and answer for the consideration of the full court.

The second petition was heard before *Hammond,* J., who made a decree that the form of policy submitted by the petitioner complied with St. 1907, c. 576, § 75, cl. 8, 10, with regard to the table of loan values and to reinstatement, respectively, and with cl. 3 in all respects except that it did not contain in substance the provision as to the application, stated in the opinion. Both the petitioner and the respondent appealed from the decree.

The form of policy submitted to the petitioner in the second case contained the following provisions:

" At the end of any policy year during the whole of which this policy shall have been in force, or within one month from default in premium payments, the owner shall have the following options: (1) To surrender the policy to the company . . . for its cash surrender value; (2) to surrender the policy to the company . . . for a non-participating paid-up policy payable at the time this policy would be payable if continued in force; (3) if the policy be not surrendered as above, the insurance will be automatically extended from date of default in premium payments, without any action by the owner of the policy and without participation in surplus, for a sum equal to the amount of the policy and existing dividend additions, if any, less any indebtedness to the company hereon.

" The cash surrender value will be equal to the entire net reserve on this policy by the American Experience Mortality and

·interest at three per centum yearly, less any indebtedness to the company hereon and less a sum equal to one per centum of the amount of this policy and existing dividend additions, if any, up to and including the fifth policy year, after which the said percentage will be reduced each year one-tenth per centum of the amount insured. If there be no indebtedness the cash surrender value will be as shown in the following table.

" The amount of the paid-up policy or the term of the extended insurance, will be such as the amount of the cash surrender value will purchase at net single premium rates, according to the attained age of the insured, by the American Experience Mortality and interest at three per centum yearly, and if there be no indebtedness, will be as shown in the following table. The paid-up policy or the extended insurance will be entitled to cash surrender values equal to the reserve thereon at time of surrender, computed upon the basis hereinbefore mentioned, less any indebtedness to the company thereon.

" Except as provided in this policy any default in premium payments will immediately render the policy null and void.

" Reinstatement. In event of default in premium payments, the arrears may be paid within one month, or, if not so paid and the insured shall die within the said month, this policy will be regarded as being then in force, and the arrears will be deducted in the settlement hereof; or, if requested by the insured prior to or within the said month, the arrears will be charged as an indebtedness against this policy, bearing interest at a rate not exceeding six per centum per annum, provided the entire indebtedness then outstanding shall be within the limit secured by the cash surrender value; or this policy may be reinstated at any time after the said month, upon evidence of insurability satisfactory to the company and payment of all arrears with interest thereon at not to exceed six per centum per annum. Provided, in any case, the policy has not been surrendered to the company."

· Other facts are stated in the opinion.

*W. A. Morse & J. H. McIntosh* (of New York), (*E. J. Geogan* with them,) for the New York Life Insurance Company.

*F. H. Nash*, for the Mutual Benefit Life Insurance Company,

and, with the consent of the court, for various life insurance companies and the Association of Life Insurance Presidents on the question of the constitutionality of the statute.

*D. Malone,* Attorney General, & *J. F. Curtis,* Assistant Attorney General, for the respondent.

KNOWLTON, C. J.    These are petitions under the St. 1907, c. 576, § 75, for a review of the action of the insurance commissioner in refusing to approve forms of policies for life insurance, filed with him by the petitioners, respectively. Certain preliminary questions that arise in each case are the same as arose and were decided in *Ætna Life Ins. Co.* v. *Hardison, ante,* 181.

In the first of these cases the form of policy provided for a grace of one month for the payment of every premium after the first. The St. 1907, c. 576, § 75, sub-sec. 1, provides for a grace of thirty days. A grace of one month is not the same as a grace of thirty days. It might be a longer or a shorter period, according to the time in the year when the payment became due. One month from February 10 would ordinarily be twenty-eight days. In leap year it would be twenty-nine days, but it never would be thirty days. The form of policy was insufficient in this particular.

Instead of the provision required by § 75, sub-sec. 3, the form filed by the petitioner contains this language: "This policy constitutes the entire contract between the parties, and is free of conditions as to residence, occupation, habits of life, and manner, time or place of death." For reasons stated in *Ætna Life Ins. Co.* v. *Hardison, ante,* 181, and for other reasons, this language should be changed so as to make it conform to the statute. The application should be included in the statement of the contract. It is conceivable that something in the application might be advantageous to the insured, as a part of the contract. *Millard* v. *Brayton,* 177 Mass. 533, 537. It was doubtless the intention of the Legislature that the insured should have in the policy an affirmative assurance that no statement will be used in defense of a claim, unless it is contained in a written application, a copy of which is indorsed upon or attached to the policy. See *Moore* v. *Northwestern Ins. Co.* 192 Mass. 468, 471. No departure from the exact provisions required by the statute should be permitted, unless it is too plain

for doubt that the substitution is in every way as advantageous to the insured and as desirable as the prescribed provision.

The provision that the policy shall be incontestable from date,* contained in the petitioners' form of policy, is not the same as the provision that it "shall be incontestable after two years from its date," except, etc., required by sub-section 2 of § 75 of the statute. Such a provision is not in accordance with public policy. *Reagan* v. *Union Mutual Life Ins. Co.* 189 Mass. 555. The action of the insurance commissioner in reference to this form of policy was right.

In the second case, the first objection to the form of policy, made by the commissioner, was that the clause providing for reinstatement gives the privilege "upon payment of all arrears, with interest thereon not to exceed six per cent. per annum," etc., while the statute gives the privilege "upon the payment of all overdue premiums and any other indebtedness to the company upon said policy, with interest at the rate of not exceeding six per cent. per annum." Under the statute, all loans and other indebtedness must be paid. Under this form of policy, if the arrears of premiums are paid, it is unnecessary to pay the other indebtedness to the company. Everything secured to the insured by the statute is secured by this language. The chief objection of the commissioner was that the other indebtedness is not expressly referred to in the form. But we think the meaning is clear, and that the form is sufficient.

The statute calls for a table upon or attached to the policy, "showing in figures the loan values, if any, and the options available under the policy each year, upon default in premium payments," etc. The table in the petitioner's form shows the "cash surrender value" accurately, the column being headed with those words. Just before the table, under the head "loans," in large type, is a statement that "At any time while

---

* The language of the provision in the policy of the New York Life Insurance Company was as follows: "Incontestability. This policy shall be incontestable, except for non-payment of premiums, from its date."

The provision in the policy of the Mutual Benefit Life Insurance Company on the same matter was: "Incontestability. If within one year the insured shall commit suicide, while sane or insane, this policy will be null and void. This policy will be incontestable after one year except for non-payment of premium."

this policy is in force, the company will loan up to the limit secured by the cash surrender value," etc. We are of opinion that the table, with the accompanying statement, sufficiently shows the loan value.

For reasons already stated in this opinion and in the *Ætna Life Ins. Co.* v. *Hardison, ante,* 181, the form is defective in not containing a provision that the contract includes the application, as well as the policy, and also a provision that no statement made by the insured shall be used in defense to a claim under the policy, unless it is contained in a written application and a copy of the application is indorsed upon or attached to the policy when issued. The policy holder is entitled to have the agreement in the policy substantially as it is stated in the provision. Not only the legal effect of the contract, but the character of it, should be stated in the policy. This clause of the statute should be construed strictly. In former cases, under the R. L. c. 118, § 73, where the conditions were peculiar, applications were admitted in evidence, notwithstanding certain safeguards for the insured which were less strict than some of those furnished by this statute. *Holden* v. *Prudential Ins. Co.* 191 Mass. 153. *Moore* v. *Northwestern Ins. Co.* 192 Mass. 468. *Paquette* v. *Prudential Ins. Co.* 193 Mass. 215. *Holden* v. *Metropolitan Ins. Co.* 188 Mass. 212. *Reagan* v. *Union Ins. Co.* 189 Mass. 555.

In the first of the cases before us, a gentleman of the bar appeared as *amicus curiae*, by leave of the court, representing parties interested in the decision that might be made upon the construction and effect of the statute, and presented a brief suggesting that the section under which the petitions are brought is unconstitutional. The parties who invoke the aid of the court are precluded from making this contention, (*Pitkin* v. *Springfield*, 112 Mass. 509,) and the respondent does not desire to make it. It is a general rule that the court will not consider the constitutionality of a statute upon an objection made by persons whose rights are not affected by it, and usually the parties to the suit are the only ones who are permitted to raise such a question. But where, as in this case, the jurisdiction of the court depends entirely upon the validity of the act, and the attention of the court is brought to that fact by persons interested in the effect

to be given to the statute, although not interested in the case before the court, we deem it our duty to consider whether we have jurisdiction, before taking affirmative action. Action of a court that has no jurisdiction is void. *Belcher* v. *Sheehan,* 171 Mass. 513.

The first suggestion is that the Legislature could not give the insurance commissioner power to pass upon the forms of policies to be issued, and, especially, could not provide that an insurance company should be liable criminally for issuing a policy in a form not approved by him. Secondly, it is suggested that jurisdiction could not be given to this court to review the action of the insurance commissioner in a case of this kind.

The insurance commissioner is an administrative officer. The Legislature prescribed the requirements in the forms of policies. It did not see fit to prescribe a standard form for life insurance companies, but stopped with an enactment of substantive provisions for all policies. It was proper to leave to the insurance commissioner the management of details in the administration of the law. It was proper to prohibit the use of policies that did not conform to the law, and to punish disobedience on the part of an insurance company. It was a reasonable regulation to require companies to submit the forms of policies to the insurance commissioner before using them, so that he could see whether the law was being obeyed. His duty was to approve of every form of policy that seemed to him correct. The insurance companies, after submitting their forms to him, had nothing to do but to go on with their business, unless he made objection within thirty days. If he made such objection, they were given a right to bring a suit in this court for the determination of the question whether their proposed action was within the law.

With the power of regulation of the business of insurance, and of the conduct of corporations, domestic and foreign, belonging to the Legislature, it seems to us plain that such companies may be forbidden to issue policies that are deemed contrary to law by an administrative officer, until the court can determine the legal questions involved. The insurance commissioner cannot decide finally, nor exercise any judicial power in the premises. In these cases, the companies failed to satisfy an administrative officer, acting for the protection of the public, that they were proceeding

legally.   The statute declares that, thereupon, they shall do no more business until there is a judicial determination of their rights by this court.   This part of the case is covered by the decision in *Provident Savings Society* v. *Cutting*, 181 Mass. 261, and there are many other cases in which authority somewhat like this is held to have been rightly exercised by public officers.   *Insurance Co.* v. *Wilder*, 40 Kans. 561.   *State* v. *Moore*, 42 Ohio St. 103.   *Brodbine* v. *Revere*, 182 Mass. 598.   *Commonwealth* v. *Sisson*, 189 Mass. 247.

The authority for a so called review by this court is simply a provision for an original judicial proceeding which an insurance company ·may bring before a court of law, to ascertain whether its action in establishing the form of its policy is legal.   The party on one side is the company, the party on the other side is the insurance commissioner representing the public.   It is a convenient and proper method of settling the rights of the company and of the people, by a regular trial of the disputed question whether the company, in its plan for conducting its business, is within the statute.   There is no reason why the Legislature should not provide such a judicial tribunal for such a purpose. See St. 1890, c. 304.   *Employers' Liability Assurance Corp.* v. *Merrill*, 155 Mass. 404.   *Janvrin, petitioner*, 174 Mass. 514. *Moynihan's appeal*, 75 Conn. 358.   We see no constitutional objection to this part of the act.

We need not discuss at length the other constitutional questions raised.   We have assumed already that the Legislature has large powers for the regulation of the business of insurance.   It may act under the police power for the protection of the public, or it may act as the creator and controller of corporations, domestic and foreign, which are subject to this power.   This has been decided in many cases in this Commonwealth and else where.   The following are some of the decisions that rest mainly on the first ground: *Commonwealth* v. *Roswell*, 173 Mass. 119. *White* v. *Provident Savings Assurance Society*, 163 Mass. 108. *Kidder* v. *United Order of the Golden Cross*, 192 Mass. 326. *Cutting* v. *American Ins. Co.* 197 Mass. 131.   *Considine* v. *Metropolitan Ins. Co.* 165 Mass. 462.   *Chicago Ins. Co.* v. *Needles*, 113 U. S. 574.   *Hancock Ins. Co.* v. *Warren*, 181 U. S. 73, 75, 76. *Equitable Life Society* v. *Clements*, 140 U. S. 226, 233.   *Common-*

*wealth* v. *Vrooman,* 164 Penn. St. 306.  *Fidelity Mutual Life Association* v. *Ficklin,* 74 Md. 172.  *Leavenworth* v. *Booth,* 15 Kans. 627.  Some of the decisions that rest mainly on the second ground are the following: *Oliver* v. *Liverpool & London Ins. Co.* 100 Mass. 531.  *Opinion of the Justices,* 97 Maine, 590.  *Dedham Bank* v. *Chickering,* 4 Pick. 314.  *Fidelity Mutual Life Association* v. *Mettler,* 185 U. S. 308.  *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557.  *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, 43. *Security Ins. Co.* v. *Prewitt,* 202 U. S. 246, 257.

The right of the Legislature to prescribe a standard form of policy has been assumed in many cases.  *Quinn* v. *Fire Association,* 180 Mass. 560.  *Hewins* v. *London Assurance Co.* 184 Mass. 177, 183.  *Boyden* v. *Massachusetts Masonic Association,* 167 Mass. 242.  *Quinlan* v. *Providence Ins. Co.* 133 N. Y. 356, 365.  *King* v. *Concordia Ins. Co.* 140 Mich. 258.  *Dowling* v. *Lancashire Ins. Co.* 92 Wis. 63.  *Anderson* v. *Manchester Ins. Co.* 59 Minn. 182.  *O'Neil* v. *American Ins. Co.* 166 Penn. St. 72. We see no reason to doubt the constitutionality of the statute.

In each of the cases the form of the policy was incorrect in the particulars hereinbefore stated, and the petitioners are not entitled to relief under their petitions.

*So ordered.*