REGAN, Judge.
Plaintiff, Charles J. Donner, instituted this suit against the defendants, The Equitable Fire & Marine Insurance Company and Providence Washington Insurance Company, endeavoring to recover from each defendant the face value of a fire insurance policy, that is, $1,500, less the-amount of $597.22 voluntarily paid by each of the defendants, together with penalties,, interest, and attorney’s fees, to partially reimburse the plaintiff for fire damages, amounting to $4,374.65, incurred on April-11, 1951, to the premises designated by municipal number 724 — 32 Opelousas Avenue,, located in Algiers, Louisiana.
The defendants pleaded the exceptions, of no right or cause of action, which were referred to the rherits, and then answered' denying that they were liable for any monetary amount in addition to what they had' already paid in conformity with the terms, of the two policies of fire insurance which-contain a 75% coinsurance clause and a provision for an appraisal of the cash value-of the property at the time of the loss.
From a judgment in favor of defendants, and against the plaintiff dismissing his suit,, he has prosecuted this appeal.
*87 The record reveals that plaintiff is the owner of a commercial building located as described in the first paragraph hereof, which was insured against loss by fire and other perils up to the amount of $1,500 by the defendants, The Equitable Fire & Marine Insurance Company and for a similar amount by Providence Washington Insurance Company.
A fire occurred in the premises on April 11, 1951, which caused partial damage to the building, the amount of which is conceded by the litigants to be $4,374.65.
Each policy contained a 75% coinsurance clause,[1] which the defendants insist required the plaintiff to maintain insurance of at least 75% of the actual cash value of the property; otherwise he would become an insurer to the extent of the deficit and would therefore bear his proportionate part of the loss. Each policy also contained a provision requiring the plaintiff and the defendants in the event that they could not agree as to the actual cash value of the property or the amount of the loss to submit the matter to appraisers for determination.
After the fire loss occurred, defendants, through William Foss, Jr., their adjuster, ascertained that the value of the building indicated that plaintiff had not complied with the coinsurance provisions of the policies. The adjuster endeavored to arrive at the value of the property for the purpose of applying the coinsurance clause, but plaintiff was unwilling to agree thereto. Defendants then invoked the provisions of the policy with respect to appraisal and requested that the determination of the actual cash value of the property at the time of the loss be submitted to appraisers. Plaintiff refused to comply with that request and to justify his position asserted that the policy provisions did not require him to do so; he then demanded payment of the principal amount of each policy.
Defendants in conformity with the terms of the policies had an appraisal made of the property by George J. Lupo, who subsequently qualified as an expert in the lower court and confirmed that before suit was filed he had appraised the value of the property at $14,650. The defendants at that time computed the amount which the plaintiff was entitled to recover after the application of the coinsurance clause, and each paid him the sum of $597.22.
Thereafter plaintiff instituted this suit asserting that he was entitled to recover $1,500 from each company, less the respective amounts of $597.22 already paid by the defendants
It appears that plaintiff’s basic contention is that the coinsurance clause and the Valued Policy Law[2] should be construed *88 together and then interpreted so that the amount of the insurance purchased by the insured is accepted as of the date of the contract as 75% of the value of the property; and, in conformity with this interpretation, it is not now legally permissible for the defendants after a loss has been incurred by the plaintiff to prove the real or actual value of the property by virtue of an appraisal thereof.
Defendants, on the other hand in resisting plaintiff’s claim, simply maintain that in applying the coinsurance clause to the facts herein, plaintiff has recovered all that he is entitled to, and therefore the judgment of the lower court should be affirmed.
The only question posed for our consideration is whether the lower court properly applied the coinsurance clause to both the facts as revealed herein and to these policies of insurance.
The pertinent portions of these insurance policies[3] read:
“It is a part of the consideration of this Policy, and the basis upon which the rate of premium is fixed, that the Insured shall at all times maintain insurance on each item of property insured by this Policy, of not less than seventy-five per cent (75%) * * * of the actual cash value thereof and that, failing so to do, the Insured shall be an insurer to the extent of such deficit and in that event shall bear his, her or their proportion of any loss.”
“ * * * Jn case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand * * *. The appraiser shall then appraise the loss, stating separately actual cash value and loss to each item; * * *. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.”
The coinsurance clause and the Valued Policy Law were in full force and effect at the time that these policies of insurance were issued by the defendants to the plaintiff and at the time that the loss occurred. It was shown on the trial hereof that the amount of the insurance set forth in the policy does not establish the value of the property. Plaintiff’s witness, Albert S. Weckerling, the agent who wrote the policy, testified that he did not appraise the property when he wrote the insurance nor has he ever attempted to appraise the property for the purpose of determining its value in the event of a loss.
In Simon v. Queen Insurance Company[4] decided in 1907 the organ of the Supreme Court discussed fully at that time the contentions which plaintiff is presently posing for our consideration. The court in that case reversed the decision of the Court of Appeal which had permitted plaintiff to recover from the defendant insurance company despite the fact that the coinsurance clause had been violated by the plaintiff. The lower court had concluded that the rationale of the Value Policy Statute prevented the enforcement of the coinsurance clause.
*89 In the Simon case the plaintiff had purchased insurance in the amount of $20,600, and it was later established that the property had a value of $33,362.96. In applying the coinsurance clause the organ of the court set forth the clause which is practically identical to the clause in the present policies and which read as follows:
“ ‘It is a part of the consideration of this policy and the basis upon which the rate of premium is fixed, that the insured shall maintain- insurance on ■each item of property insured by this policy of not less than 75 per cent, of the actual cash value thereof and that failing so to do the insured shall be an insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of the loss.’ ”
The Court then related:
“Defendants’ counsel in their brief quote from 4 Cooley on the Law of Insurance, p. 3115, as follows:
“ ‘A co-insurance clause in a policy limiting the risk of the insurer to such proportion of the loss as the sum insured bears to the value of the whole property, covered is reasonable and valid. Pennsylvania Fire Insurance Co. v. Moore, 21 Tex.Civ.App. 528, 51 S.W. 878.
“ ‘And a stipulation in a policy that, if insured shall fail to comply with a covenant on his part to maintain total insurance of not less than 75 per cent, of the total cash value of the property, he shall be deemed a co-insurer to the extent of the deficiency, and in that event shall bear his proportion of all loss occurring under the policy, is not in contravention of a statute providing that all insurance companies shall pay the full amount of loss sustained on the property insured by them, providing said amount does not exceed the amount of insurance expressed in the policy, and which declared that all stipulations to the contrary shall be void according to Fireman’s Ins. Co. v. Pekor, 106 Ga. 1, 31 S.E. 779. And in Quinn v. Fire Ass’n of Philadelphia, 180 Mass. 560, 62 N.E. 980, a rider attached to a policy which provided that insured should maintain insurance on the property to the extent of 80 per cent, of the cash value thereof, and, failing to do so, should be an insurer to the extent of such deficit and to that extent should bear his proportion of the loss, if any, was held not obj ectionable as not being within a statute permitting companies to attach provisions adding to or modifying the standard form.’
“Counsel say:
“ ‘Thus it will be seen that not only is the stipulation for co-insurance legal, but that the further stipulation of failing to secure co-insurance, on the amount agreed on would make insurer (insured) a co-insurer for such deficit has also been held legal. Standard policies in general in this country provide for co-insurance, and lower rates are obtained by insurers by reason thereof than would otherwise be obtained. There could, of course, be no discussion on this point, but for the statute known as the “Valued Policy Act” of the Louisiana Legislature. Act No. 135, p. 209, of 1900. * * * ’
“That act says:
“ ‘The insurer shall pay,’ etc.
“Who- is the insurer?
“ ‘The contract says that the insured shall become an insurer under certain conditions, and the act in question does not prohibit such contracts. It was not intended, nor does it, to prevent insured from himself becoming by actual agreement with insurers a co-insurer for certain amount of damages. That is a matter which is purely personal, and is in no way against public policy, *90 and does not contravene the statute in question.’
******
“We think under the authorities cited that defendant’s position in this matter is correct. Our Code (Civ.Code, art. 1764) declares that all things that are not forbidden by law may legally become the subject or motive for contracts. Liberty of contract is the rule, limitations and restrictions the exception. We do not find that the stipulation in defendant’s policy as to the assured becoming a co-insurer with the defendant in certain contingency and conditions (which plaintiffs attack) is against public policy. It is not prohibited by any law, and we do not think it should be read into the statute of 1900 by construction.”[5]
Plaintiff points out that following the Simon case, the Legislature prohibited the use of the coinsurance clause. It is true that the clause was prohibited for some time, but Act No. 136 of 1922 was enacted permitting coinsurance clauses to be used in some instances, and by virtue of the passage of Act 195 of 1948 the coinsurance clause in its present form was adopted.[6] The language used in the Valued Policy Law was the same at the time that the Simon case- was decided as it was when these policies were issued and the loss incurred. Act 135 of 1900 contained the identical provisions that the Insurance Code, Section 15.05 contained when it was adopted by virtue of the enactment of Act 195 of 1948, except for the first few words thereof which are not relevant to this controversy. The Valued Policy Act was entirely rewritten by the 1952 Legislature. Therefore, the reasoning in the Simon case represents the existing jurisprudence of Louisiana insofar as it interprets the rationale of both the Valued Policy Law and the coinsurance clause.
In the last analysis, plaintiff insists that the policies were not stamped upon the face and back with the following caveat:
“This policy is issued subject to the conditions of the coinsurance clause attached thereto.”
An examination of these policies reflects that they contain the identical language required by the statute, which is quoted here-inabove, and it is stamped on the face and back of each policy. The law requires nothing more.[7]
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. LSA-R.S. 22:694. “No policy of fire, lightning or ■windstorm insurance covering property or risks in this state shall contain any clause or provision requiring the insured to take out or maintain a larger amount of insurance than that covered by such policy nor providing in any way that the insured shall be liable as a co-insurer with the insurer unless:
“(1) Such clause has been approved by the fire insurance division and there has been a consideration allowed in the rate of premium charged for such policy, and
“(2) The policy shall have stamped upon its face and back the following:
“ ‘This policy is issued subject to the conditions of the co-insurance clause attached thereto.’ ”

. LSA-R.S. 22:695. “A. Whenever any policy of insurance against loss by fire is written * * * on property immovable by nature and situated in this state, and the said property shall be either partially damaged or totally destroyed * * the value of the property as assessed by the insurer or as by it permitted to be assessed at the time of the issuance of the policy, shall be conclusively taken to be the actual value of the property at the time of the issuance of the policy and the actual value of the property at the time of the damage or destruction; * $ *_
“B. Whenever any policy of insurance against loss by fire, is written * * * on property situated in this state, and the said property shall be *88 totally destroyed * * * the full amount of the insurance on the property so destroyed shall be paid by the insurer, and that when the said property shall be partially damaged * * * the insurer shall pay to the insured such amount as will permit the insured to restore the damaged property to its original condition. Provided, that nothing herein shall be so construed as to prevent the insurer from replacing property partially damaged or totally destroyed at its own expense and without contribution on the part of the insured.”

. The contracts of insurance were standard fire insurance policies, LSA-R.S. § 22:691.

. 1907, 120 La. 477, 45 So. 396, 397.

. 1907, 120 La. 477, 485-488, 45 So. 396, 399-400.

. Supra, note 1.

. Ibid.